NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                )    BAP No.   EC-11-1735-KiDJu
                                       )
BETSEY WARREN LEBBOS,                  )    Bk. No.   06-22225-RSB
                                       )
                 Debtor.               )    Adv. No.  11-2386-RSB
_____        )
                                       )
JOSEPH GIOVANAZZI, Trustee of          )
the Aida Madeleine Lebbos              )
No. 2 Trust; JOSEPH                     )
GIOVANAZZI, Trustee of the             )
Aida Madeleine Lebbos                  )
Trust II,                              )
                                       )
                 Appellants,           )
                                       )
v.                                     )    **M E M O R A N D U M**[1]
                                       )
LINDA SCHUETTE, Chapter 7              )
Trustee,                               )
                                       )
                 Appellee.             )
_____        )

Argued and Submitted on October 19, 2012,
at Sacramento, California

Filed - December 31, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

Appearances:     Neil Harrison Lewis, Esq. argued for appellant,
                 Joseph Giovanazzi; Michael Paul Dacquisto, Esq.
                 argued for appellee, Linda Schuette.

Before: KIRSCHER, DUNN, and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, Joseph Giovanazzi ("Giovanazzi"), Trustee of the Aida Madeleine Lebbos No. 2 Trust and the Aida Madeleine Lebbos Trust II (collectively the "Trust"), appeals an order and judgment from the bankruptcy court granting the chapter 7[2] trustee, Linda Schuette ("Trustee"), partial summary judgment on two of her three claims against Giovanazzi. Giovanazzi also appeals from the bankruptcy court: (1) the order denying his motion to dismiss Trustee's adversary action; (2) the orders denying his motions to disqualify the court and transfer venue; and (3) the orders denying his motion for reconsideration of all of the above orders and judgment. We AFFIRM in part and DISMISS in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    The prior adversary action 07-2006**

Debtor, Betsey Warren Lebbos ("Lebbos"), filed a chapter 7 bankruptcy case on June 26, 2006.[3]   On January 3, 2007, Trustee filed an avoidance action against Lebbos, Thomas Carter ("Carter") and Jason Gold ("Gold"). Gold is a law school graduate. Lebbos, Carter and Gold were either the sole or co-trustees of the Trust. Lebbos was sued in her individual capacity and as trustee of the

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] Lebbos is a former attorney who practiced law in California from 1975 until 1991 when she was disbarred. Giovanazzi is also a California licensed attorney, SBN 42827. He was admitted to practice law in California in 1969. Giovanazzi was disbarred in 1990. His license was reinstated in 2003. In connection with his actions surrounding the instant adversary action and other matters, Giovanazzi is facing multiple disciplinary charges before the California State Bar Court. See California State Bar website at http://members.calbar.ca.gov/fal/Member/Detail/42827.

Trust; Carter and Gold were sued in their capacities as trustees of the Trust. The avoidance action sought to set aside two fraudulent transfers by Lebbos of a condominium located in Long Beach, California ("Condo"), injunctive relief, turnover of the Condo and its rent proceeds and other additional relief. The transfers at issue occurred on August 19, 2004 (from Lebbos to the Trust) and May 25, 2005 (from Lebbos as trustee of the Trust to Carter and Gold, co-trustees of the Trust).

On January 4, 2007, Trustee served a Notice of Pendency of Action on Lebbos, Carter and Gold ("Lis Pendens"). The Lis Pendens was recorded in Los Angeles County on March 14, 2007.

On April 17, 2008, Trustee obtained a default judgment ("Judgment"), with supporting findings of fact and conclusions of law, which (1) avoided both transfers, (2) awarded recovery of all right, title, and interest in the Condo held by Lebbos, Carter and Gold to Trustee and (3) found Trustee's interest in the Condo to be superior to any right, title, and interest of Lebbos, Carter and Gold. The defendants were ordered to turn over the Condo and all rents it generated as of June 26, 2006 (the date Lebbos filed her chapter 7 petition), and were further enjoined from any efforts to convey, transfer, encumber or otherwise affect the title to or the encumbrances on the Condo.

Lebbos, Carter and Gold appealed the Judgment to the United States District Court, Eastern District of California, the Ninth Circuit Court of Appeals and the United States Supreme Court.

Each appeal was unsuccessful.[4]  The Judgment is now final.

**B.   Events leading to the present adversary action 11-2386**

On April 14, 2008, just three days before the bankruptcy court entered the Judgment, a quitclaim deed from Carter and Gold to Giovanazzi transferring title of the Condo to Giovanazzi was recorded in Los Angeles County.

On August 13, 2008, Giovanazzi, as trustor, signed a deed of trust purporting to encumber the Condo to secure payment of an alleged promissory note for $775,000.  The beneficiaries of the deed of trust were Aida Madeleine Lebbos (debtor's daughter), Cameron Dacquila (debtor's granddaughter) and Brandon Dacquila (debtor's grandson)(collectively "Beneficiaries").  That deed of trust was recorded in Los Angeles County on September 19, 2008.

In January 2009, Giovanazzi filed a quiet title action in the Los Angeles Superior Court against Judges Bardwil and Bufford, Trustee and her counsel.  That suit was dismissed on immunity grounds and the dismissal was affirmed on appeal.

On July 30, 2009, Trustee advised Giovanazzi (and Lebbos, Carter and Gold) by letter that Giovanazzi did not have an ownership interest in the Condo and that he was not entitled to pursue any actions against it.  Trustee advised Giovanazzi of the same in a second letter dated October 2, 2009.

On August 20, 2009, the bankruptcy court entered an order authorizing Trustee to employ a real estate broker to sell the

---

[4] The district court affirmed the bankruptcy court on January 26, 2009 (case no. 08-912-FCD).  The Ninth Circuit affirmed the district court on January 22, 2010 (case no. 09-15271).  The U.S. Supreme Court denied a petition for writ of certiorari on November 10, 2010 (case no. 10-6484).

-4-

Condo. On April 1, 2010, the bankruptcy court entered an order authorizing Trustee to employ Haas Management Company as property manager for the purposes of renting and caring for the Condo.

On August 27, 2010, Giovanazzi, still claiming he owned the Condo, filed an unlawful detainer action in Los Angeles Superior Court seeking to evict the tenants placed in the Condo by Trustee and Haas Management Company.

**C.    The present adversary action 11-2386**

In response to Giovanazzi's actions and after the last appeal from adversary action 07-2006 had been completed, on May 26, 2011, Trustee filed an adversary action against Giovanazzi asserting three claims. In her first claim under § 551 for preservation of a previously avoided transfer and subsequent transfer, Trustee sought an order/judgment (a) confirming the August 19, 2004 and May 25, 2005 transfers of the Condo had been preserved for the benefit of the bankruptcy estate, (b) avoiding the April 14, 2008 quitclaim deed to Giovanazzi, (c) avoiding the August 13, 2008 deed of trust to the Beneficiaries, (d) declaring the unlawful detainer lawsuit had no force or effect on Trustee or the Condo, and (e) for injunctive relief preventing Giovanazzi from any further actions affecting the Condo. Trustee's second claim sought turnover of rents allegedly collected by Giovanazzi on the Condo between April 17, 2008, the date Trustee was awarded title to the Condo, and July 2009, the date Trustee took possession.[5] Trustee's third claim sought declaratory relief as to the issues

_____

[5] Trustee ultimately did not seek a judgment on the second claim and withdrew it on December 19, 2011. Therefore, we do not discuss this claim, except as necessary.

-5-

between Trustee and Giovanazzi and requested an order/judgment providing essentially the same relief sought in the first claim.

### 1. Giovanazzi's motions

In response to Trustee's complaint, Giovanazzi, appearing pro se, filed three motions: (1) a motion to dismiss under Civil Rule 12(b)(6) ("Motion to Dismiss"); (2) a motion to disqualify Judge Bardwil ("Recusal Motion"); and (3) a motion to transfer venue ("Venue Motion").

### a. Motion to Dismiss

Giovanazzi argued that adversary action 11-2386 should be dismissed for a multitude of reasons. He contended, generally, that because Lebbos never signed her chapter 7 petition, and because she never resided within the district the required 180 days, the bankruptcy court lacked jurisdiction to have entered the Judgment. He further argued Trustee lacked standing and the bankruptcy court lacked jurisdiction over this matter because Lebbos had been denied her discharge and therefore no pending bankruptcy existed.

Specifically, Giovanazzi contended that the Judgment was void as to him and the Beneficiaries and that Trustee's preservation claim under § 551 pertained only to Lebbos, Carter and Gold - the parties sued in Trustee's avoidance action, not Giovanazzi and the Beneficiaries, who were indispensable parties not joined in that prior action. Giovanazzi further contended that because the instant action was filed three years after entry of the Judgment, it was barred by the one year statute of limitations in § 550(f). In other words, Trustee's "new avoidance action" against him and the Beneficiaries, the subsequent transferees of the Condo, was

time barred. Alternatively, Giovanazzi asserted Trustee's action was barred by laches because she waited over three years after the Judgment to sue him and the Beneficiaries. Finally, Giovanazzi contended that Trustee had no claim for preservation under § 551 because the Condo was never property of the estate, and he further disputed the bankruptcy court's jurisdiction over the Condo since it was located in Los Angeles. Giovanazzi summarily asserted that Trustee's third claim for declaratory relief had to be dismissed because all title reports showed that he owned the Condo.

Giovanazzi's Motion to Dismiss also asserted that a case was pending in the U.S. Supreme Court regarding the criminal conduct of Trustee and her counsel of fabricating a writ to take possession of the Condo and steal the rugs, paintings, appliances and rents from the Beneficiaries. Giovanazzi further asserted that a complaint was pending to the Judicial Conference Committee concerning Judge Bardwil's conduct in issuing two ex parte orders to sell or lease the Condo knowing he had no jurisdiction to do so and never providing any notice to anyone.

Trustee opposed the Motion to Dismiss, asserting that Giovanazzi's arguments lacked foundation or factual support and that most of them were frivolous and designed solely to delay. Specifically, Trustee argued that since her claim for preservation was brought under § 551, it was not subject to the one year statute of limitations in § 550(f) and, in any event, no action under § 550 was necessary or requested against Giovanazzi. According to Trustee, she did not need to sue Giovanazzi for avoidance of the pre-Judgment transfer to him from Carter and Gold because the Judgment ordered the avoidance of the earlier

-7-

transfers and recovery of the Condo; thus, she could rely on the automatic preservation provision of § 551 for the subsequent transfer to Giovanazzi. Trustee also rejected Giovanazzi's laches argument, contending that she waited to sue him until the appeal of the Judgment was resolved and filed her action in just over six months from that date, which was timely.

Trustee further contended that the issue of whether the Condo was property of the estate was decided in the prior adversary action and affirmed on appeal. Moreover, Giovanazzi's claim that the "owners" of the Condo were never sued was incorrect; the Judgment determined that Lebbos owned the Condo. Thus, argued Trustee, these factual issues were law of the case and not subject to challenge. Further, argued Trustee, the denial of Lebbos's discharge did not remove the Condo from estate property.

As to Giovanazzi's assertions that the bankruptcy court lacked subject matter jurisdiction over the action because (1) Lebbos never signed her bankruptcy petition or resided in the district, (2) the Judgment had no effect over the Beneficiaries, (3) the Condo was located in Los Angeles and (4) the court failed to provide the Beneficiaries with any opportunity to appear and defend this action, Trustee contended that such matters were both outside the allegations in the complaint and they had already been resolved in prior court rulings.

**b.    The Recusal Motion**

Giovanazzi alleged that Judge Bardwil should disqualify himself from adversary action 11-2386 for a multitude of reasons: (1) he had a financial interest in its outcome, which stemmed from a previous suit against him by Lebbos, Carter and Gold and a new

-8-

suit by Giovanazzi and the Beneficiaries; (2) he had a political and personal interest in the outcome since his conduct of "taking property from owners without any notice" was the subject of an article published by the Ninth Circuit entitled "Ambush Owner Scam;" (3) he had prejudged the matter as reflected by his issuance of two ex parte orders in 2009 and 2010 authorizing the sale and lease of the Condo; (4) he had ex parte contacts with Trustee in connection with those ex parte orders; (5) he was embroiled with Lebbos in her discrimination case against him pending before the Ninth Circuit; and (6) he had a pervasive bias against Lebbos, the prior defendants, Giovanazzi and the Beneficiaries.

Trustee opposed the Recusal Motion, contending Giovanazzi's arguments were not supported by any facts and that the motion failed to meet the requirements for recusal under 28 U.S.C. § 455 and Rule 5004(a). Trustee further noted that Lebbos had filed similar recusal motions against Judge Bardwil in her bankruptcy case and in adversary action 07-2006, each of which was denied,[6] and argued that Giovanazzi was merely engaging in the same antics and regurgitating Lebbos's prior arguments.

### c. The Venue Motion

Giovanazzi moved to transfer adversary action 11-2386 to either Maryland or the Central District of California. Giovanazzi contended that Maryland was a proper venue because the Trust was created there and because the three owners and settlor of the

---

[6] The record reflects that three motions to disqualify were filed in the main case and five motions were filed in adversary action 07-2006.

-9-

Trust resided there. Alternatively, he asserted the Central District of California was the proper venue because the Condo was located there and all experts and other witnesses were in Los Angeles. Giovanazzi asserted virtually the same reasons set forth in the Recusal Motion and the Motion to Dismiss as a basis to grant the Venue Motion.

Trustee opposed the Venue Motion, contending that Giovanazzi failed to meet his burden of proof to transfer the case.

**2.    Trustee's motion for partial summary judgment**

Trustee moved for partial summary judgment against Giovanazzi on her first and third claims ("PSJ"). Trustee asserted that she was entitled to relief on her first claim for preservation under § 551 because the avoided transfers under §§ 544 and 548, as set forth in the Judgment, were automatically preserved for the benefit of the bankruptcy estate. Trustee argued that by virtue of the Judgment, she became the owner of the Condo as of August 19, 2004, the date of the first avoided transfer, and therefore any transfer of or lien placed on the Condo after that date was void. As a result, argued Trustee, the April 14, 2008 quitclaim deed from Carter and Gold to Giovanazzi and the August 13, 2008 deed of trust from Giovanazzi to the Beneficiaries were void and of no force or effect. The same was true for Giovanazzi's unlawful detainer action.

Alternatively, Trustee contended that she was entitled to relief on her first claim under California law. She argued that based on the Judgment and CAL. CODE CIV. PROC. ("CCP") § 405.24, she obtained title to the Condo when the Lis Pendens was recorded - March 14, 2007. Because the Lis Pendens was recorded more than

-10-

one year prior to the transfer to Giovanazzi in August 2008, Trustee argued that Giovanazzi and all others had constructive notice of the pending adversary action and that her interest prevailed over the later-recorded quitclaim deed to Giovanazzi, the deed of trust executed by Giovanazzi and recorded on September 19, 2008, and the unlawful detainer action Giovanazzi filed on August 27, 2010.

For judgment on her third claim for permanent injunctive relief, Trustee contended that based on Giovanazzi's actions of taking title to the Condo despite having notice of the Lis Pendens, his signing a deed of trust to encumber the Condo, his filing of an unlawful detainer action to obtain possession of the Condo and his ignoring counsel's letters from July and October 2009 regarding his lack of ownership, a reasonable likelihood existed that Giovanazzi would continue to interfere with Trustee's exclusive right to administer the Condo for the benefit of the bankruptcy estate.

Giovanazzi opposed the PSJ, raising primarily the same arguments asserted in his Motion to Dismiss as a basis for denying the PSJ. Giovanazzi additionally contended that because the Lis Pendens failed to comply with California law for a variety of technical reasons, it was void, and so the Judgment did not relate back to March 14, 2007. In support of his opposition, Giovanazzi included declarations from Lebbos and Gold. Both Lebbos and Gold claimed they never received a copy of the Lis Pendens or a copy of Trustee's counsel's July 2009 letter.

In her reply to the PSJ, Trustee contended that Giovanazzi had failed to assert any disputed material fact to defeat it.

-11-

Specifically, argued Trustee, Gold's statement that he never received the Lis Pendens at his address of record was irrelevant; Gold was not a defendant in this action and service of the Lis Pendens had no bearing on the issues raised in the PSJ. In any event, argued Trustee, Giovanazzi had constructive notice of the Lis Pendens under CCP § 405.24, and he did not dispute it. Similarly, Gold's statement that he never received the July 2009 letter from Trustee's counsel was irrelevant as it was not being offered against Gold; the letter was being offered against Giovanazzi, and he did not dispute receiving it. Trustee asserted the same arguments with respect to the Lebbos declaration.

**3. The bankruptcy court's decision on the PSJ, Motion to Dismiss, Recusal Motion, and Venue Motion**

After a hearing on the PSJ and the Motion to Dismiss on August 31, 2011, the bankruptcy court took the matters under submission and entered written decisions on each.

**a. The PSJ**

The bankruptcy court entered a memorandum decision, judgment ("PSJ Judgment") and order granting Trustee's PSJ on September 30, 2011. Before articulating its reasons for granting it, the court discussed the lengthy and tumultuous history of prior adversary action 07-2006, the shenanigans that led to defendants' default and the eventual Judgment.

In the memorandum, the court explained that after Trustee had obtained the defaults of Lebbos, Carter and Gold, she moved for default judgment against them on March 11, 2008. All three defendants filed oppositions to Trustee's motion. A hearing on Trustee's motion was scheduled for April 9, 2008, but was

-12-

continued to April 15, 2008. At the request of Lebbos's attorney, the court continued the hearing again until April 17, 2008. The hearing went forward on April 17, at which Gold and Lebbos's attorney appeared. That same day, the bankruptcy court entered its findings and conclusions and the Judgment against Lebbos, Carter and Gold, which avoided the two transfers from 2004 and 2005, awarded title and possession of the Condo to Trustee, and further enjoined Lebbos, Carter and Gold from efforts to convey, transfer, encumber or otherwise affect the title to or the encumbrances on the Condo. The bankruptcy court then noted:

> Three days earlier, on April 14, 2008, Gold and Carter, having by that time participated heavily in the adversary proceeding, including seeking to have it dismissed, to have the venue changed, and to have this judge disqualified; having appealed the decisions against them; having thrown up unrelenting roadblocks to the trustee's discovery efforts; knowing full well that their defaults had been entered over their objections; and knowing full well of the hearing on the trustee's motion for default judgment -- at that time, scheduled for the very next day, signed and caused to be recorded a quitclaim deed purporting to transfer the [C]ondo to Giovanazzi . . . .

Mem. (Sept. 30, 2011) 4:5-15. The court further noted that Giovanazzi was no stranger to Lebbos's bankruptcy case when the Condo was transferred to him in 2008. He had filed two declarations in her case - one in support of Lebbos's motion to remove Trustee and the other objecting to Trustee's settlement of a lawsuit brought by Lebbos in 2002. Among other things, Giovanazzi had accused Trustee and her counsel of fraud and deceit because they had compromised the estate's claims asserted in the 2002 suit. Giovanazzi had also threatened to obtain arrest warrants for Trustee and her counsel.

In addressing the merits of the PSJ, the bankruptcy court

-13-

rejected Giovanazzi's contention that Trustee's claim for preservation was time barred due to the one year statute of limitations in § 550(f). The Judgment accomplished both avoidance and recovery under §§ 548 and 550, so Trustee was not required to "recover" the avoided transfers under § 550. Thus, § 550(f) was irrelevant.

The court further found that the Judgment, which was final, related back to March 14, 2007 - the date Trustee recorded her Lis Pendens. Therefore, at the time Carter and Gold signed and recorded the quitclaim deed in 2008, they had no interest to convey, and at the time Giovanazzi signed and recorded the deed of trust in 2008, he had no interest to convey. The fact that Gold and Carter signed and recorded the quitclaim deed three days before the Judgment had no effect on Trustee's rights because the Judgment related back to the date Trustee recorded her Lis Pendens. CCP § 405.24. Thus, to the extent Giovanazzi was a "purchaser" or "transferee" and the Beneficiaries were "encumbrancers," they were deemed to have constructive notice of adversary action 07-2006 and were therefore unable to acquire an interest in the Condo superior to that of Trustee. Hurst Concrete Prods. v. Lane (In re Lane), 980 F.2d 601, 605 (9th Cir. 1982); CCP § 405.24; CAL. CIV. CODE § 1214.[7]

As to Giovanazzi's claim that the Lis Pendens was void for technical reasons, the bankruptcy court agreed that a lis pendens which does not comply with the requirements set forth in

---

[7] On a side note, the bankruptcy court questioned whether the transfer of the quitclaim deed actually effectuated a transfer as it was merely from two individuals as trustees of the Trust to a third trustee of the Trust.

-14-

CCP § 405.22 may be expunged. However, Giovanazzi had not cited, and the court could not locate, any authority for the proposition that a lis pendens not in compliance with CCP § 405.22 failed to provide constructive notice to subsequent purchasers or encumbrancers. In any event, the court found that none of the alleged deficiencies impaired the effectiveness of the Lis Pendens in achieving its purpose of notifying the public.

The bankruptcy court rejected Giovanazzi's contention that nothing was to be "preserved" under § 551 because Gold and Carter had no interest in the Condo when the Judgment was entered. That argument failed to recognize that the Judgment effectuated the avoidance of the transfer by which Gold and Carter had acquired the Condo and awarded recovery to Trustee, determining that her interest was superior to theirs. In other words, articulated the court, the effect of the Judgment was that, as of March 14, 2007, Trustee stepped into the shoes of Gold and Carter and succeeded to their rights in the Condo. The court also rejected Giovanazzi's argument that the Judgment had no effect as to him and the Beneficiaries due to lack of notice or opportunity to defend. To the contrary, the Judgment, which was affirmed at every level of appeal, was final and bound all parties claiming an interest adverse to that of Trustee in the Condo.

Finally, the bankruptcy court rejected, as a complete misunderstanding of bankruptcy law, Giovanazzi's claims that no creditors or bankruptcy estate existed due to Lebbos having been denied a discharge. The denial of discharge did not eliminate the existence of the bankruptcy estate or Trustee's power and duty to continue to liquidate property of the estate for the benefit of

-15-

creditors.

Accordingly, because Trustee had met her burden of producing evidence showing that no genuine issue of material fact existed, and because Giovanazzi had failed to demonstrate the existence of genuine issues for trial, Trustee was entitled to judgment on her first and third claims as a matter of law. In the PSJ Judgment, the bankruptcy court determined that: (1) the transfers avoided in the Judgment were preserved for the benefit of the bankruptcy estate; (2) the quitclaim deed from Gold and Carter as co-trustees of the Trust to Giovanazzi as co-trustee of the Trust was void and of no force or effect; (3) the deed of trust from Giovanazzi to the Beneficiaries was void and of no force or effect; (4) Giovanazzi's unlawful detainer action was of no force or effect and provided no evidence of ownership of the Condo; (5) Giovanazzi had no right, title or interest in or to, and no claim to or against, the Condo; and (6) Giovanazzi was permanently enjoined from any further actions or efforts to convey, transfer, encumber or otherwise affect the title to or possession of the Condo.

### b. The Motion to Dismiss

The bankruptcy court entered a memorandum decision and order denying Giovanazzi's Motion to Dismiss on October 3, 2011. As a housekeeping matter, the court rejected Giovanazzi's declaration filed in support because it did not fall within the "incorporation by reference" doctrine, it consisted of impermissible legal conclusions, and Giovanazzi's allegations regarding the history of the Trust, the history of Lebbos's bankruptcy case and the ownership of the Condo demonstrated no personal knowledge. These

-16-

same "inadmissible factual allegations and legal conclusions" presented in Giovanazzi's brief were also given no weight.

The bankruptcy court rejected Giovanazzi's § 550(f) argument for the same reasons stated in the PSJ Memorandum. Section 550(f) did not apply here because the Judgment accomplished both avoidance and recovery under §§ 548 and 550. The court also rejected Giovanazzi's contention that Trustee failed to state a claim for preservation under § 551. First, preservation of the avoided transfers occurred automatically once the Judgment was entered; Trustee was merely seeking a declaration confirming that fact, and Lebbos, Carter and Gold did not have to be parties to the instant adversary action. Second, the Condo was property of the estate under § 541(a)(4), which includes any interest in property preserved for the benefit of the estate under § 551. Finally, the issues of (1) whether Lebbos owned the Condo (as opposed to the Trust) and (2) whether the Beneficiaries of the Trust (who were not served with the complaint in 07-2006) were indispensable parties to the prior adversary action had been raised during that action and were precluded by the Judgment. Furthermore, in that particular action, California law required service of the complaint only on the trustee, not the Beneficiaries.[8]

---

[8] Although Trustee later dismissed her second claim for turnover, the bankruptcy court made some important findings in that regard which apply in this appeal. The court found that Lebbos's case was still open and pending despite Giovanazzi's arguments to the contrary that it was closed because she was denied a discharge. The court also found that the Condo was determined to be property of the estate in the Judgment, which was affirmed on appeal. Further, Giovanazzi's contention that the
(continued...)

-17-

The bankruptcy court also rejected Giovanazzi's laches argument as "ironic," noting that if anyone had engaged in prejudicial delay tactics it was Giovanazzi. Further, any delays resulting from the numerous appeals were not caused by Trustee, but rather by the actions of Lebbos, Giovanazzi, Carter and Gold. Thus, Giovanazzi had failed to show Trustee's lack of diligence or that he had suffered any prejudice as a result of it.

Giovanazzi's argument that the bankruptcy court had no jurisdiction to "change title" to the Condo since it was located in Los Angeles also failed. Under Rule 7070,[9] the bankruptcy court was permitted to divest any party's title and vest title in another when the real property is "within the jurisdiction of the court." Because the bankruptcy court had jurisdiction over the Condo by virtue of § 541(a) and 28 U.S.C. § 1334(e)(1), it had jurisdiction to enter the Judgment vesting title to the Condo in Trustee.

Finally, the bankruptcy court rejected Giovanazzi's shopworn arguments previously raised by Lebbos that she did not sign her bankruptcy petition, that she never resided in the district, and that the court had no jurisdiction over the "owners" of the Condo so the Judgment was not binding on them. These issues had been

[8](...continued)
Condo was worthless because it was over-encumbered failed because, by way of the PSJ Judgment, the court had determined his deed of trust was void and of no force and effect. Finally, because of the PSJ Judgment, Trustee was not required to provide "adequate protection" of the interests of alleged "owners" of the Condo.

[9] Rule 7070 provides that the bankruptcy court "may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court."

-18-

decided in the Judgment, which was final and binding.

Accordingly, because Trustee's complaint stated a claim upon which relief could be granted, the Motion to Dismiss was denied.

### c. The Recusal Motion and Venue Motion

The bankruptcy court entered civil minute orders denying both the Recusal Motion and the Venue Motion on September 6, 2011.

### i. The Recusal Motion

The bankruptcy court noted that the arguments raised by Giovanazzi were ones Lebbos had made many times in her chapter 7 case and various adversary proceedings. Carter and Gold had brought similar motions. The court further noted that Giovanazzi's declaration in support was full of unsupported conclusions and allegations of which he failed to demonstrate personal knowledge. In short, Giovanazzi presented nothing new to cause the court to rule any differently than it had on the previous motions to disqualify. The bankruptcy court remained persuaded that it was unbiased and impartial. Therefore, based on the above reasons, Giovanazzi had not met his burden for recusal under 28 U.S.C. § 455(a) or (b).

### ii. Venue Motion

The bankruptcy court found that Giovanazzi's declaration, the only evidence in support of the Venue Motion, failed to establish he had personal knowledge of the alleged facts. Further, his assertion that the Beneficiaries were the only real parties in interest was a legal conclusion, and an erroneous one, and he failed to establish that these parties had anything to contribute to the instant adversary action. Giovanazzi had also failed to identify the experts and other witnesses who would testify or

-19-

establish what evidence, if any, might be located in the Central District of California. Finally, the remainder of Giovanazzi's contentions, many of which were made on information and belief, raised arguments that had already been decided and affirmed on appeal. Accordingly, like past similar venue motions filed by Lebbos and by Giovanazzi's predecessors, which were considered and denied, Giovanazzi had presented nothing to persuade the court to reach a different result.

**4.    Giovanazzi's motions to reconsider**

> **a.    The motion to reconsider the PSJ Judgment, Recusal Motion, and Venue Motion**

Giovanazzi filed a motion to reconsider the PSJ Judgment and the orders denying the Recusal Motion and the Venue Motion on October 13, 2011. He contended that many disputed material facts existed requiring the bankruptcy court to reconsider the PSJ Judgment: (1) the Judgment was a nullity as to the Beneficiaries because the bankruptcy court never had jurisdiction over the Trust, or the Condo or the Condo owners, and the district court and Ninth Circuit only upheld the Judgment against Lebbos, Carter and Gold as individuals, not as trustees; (2) because Giovanazzi obtained the Condo before entry of the Judgment, the bankruptcy court had no jurisdiction to avoid his deed or the deed of trust and declare them void; (3) the bankruptcy court had no jurisdiction to "retroactively change the date" of the Judgment against Lebbos, Carter and Gold without notice or without motions filed in the prior or present adversary actions; (4) the bankruptcy court lacked jurisdiction to declare Giovanazzi's unlawful detainer action invalid; (5) the bankruptcy court could

-20-

not enjoin Giovanazzi as it had no jurisdiction over the Condo or the Trust; (6) Trustee was required to file a separate recovery action against Giovanazzi and the Beneficiaries, so the bankruptcy court erred in not applying the one year statute of limitations in § 550(f); and (7) Trustee's Lis Pendens was void due to its noncompliance with CCP § 405.22, so it failed to provide notice to anyone.

Although the motion caption sought reconsideration of the orders denying the Recusal Motion and the Venue Motion, Giovanazzi did not present any argument as to why the bankruptcy court should reconsider those orders. He stated in his declaration in support only that Judge Bardwil had a duty to disqualify himself because he had committed fraud, encouraged others to commit fraud and he called "the disabled debtor vicious names and exhibits an extreme personal bias."

**b.    The motion to reconsider the Motion to Dismiss**

Giovanazzi filed a motion to reconsider the order denying the Motion to Dismiss on October 17, 2011. The motion raised many of the same arguments raised in the motion to reconsider the PSJ Judgment and in the original Motion to Dismiss. In short, Giovanazzi contended that the bankruptcy court had to grant the Motion to Dismiss because: (1) it erred in not considering his declaration filed in support of the Motion to Dismiss, which set forth facts subject to judicial notice; (2) Lebbos had not signed her bankruptcy petition or lived in the district the required 180 days, so the bankruptcy court lacked jurisdiction and all of its decisions were void; (3) Trustee was required to file a separate recovery action against Giovanazzi and the Beneficiaries

-21-

and the one year statute of limitations for that action under § 550(f) had run; (4) laches barred Trustee's complaint and the court erred in finding that Giovanazzi had "unclean hands;" (5) Trustee had no claim for preservation because she sued only Lebbos, Carter and Gold for avoidance, not recovery, and she never sued the owners of the Condo for avoidance; (6) the Judgment was not final and binding on Giovanazzi and the Beneficiaries as they were never joined in the prior avoidance action; and (7) the bankruptcy court had no jurisdiction over the Condo under Rule 7070 as it asserted.

**5.    The bankruptcy court's decisions on the motions to reconsider**

**a.    The motion to reconsider the Motion to Dismiss**

The bankruptcy court entered a civil minute order denying Giovanazzi's motion to reconsider the Motion to Dismiss on December 19, 2011.  Overall, the court found the motion was largely a rehashing of the arguments raised many times before by both Giovanazzi in the Motion to Dismiss and by his predecessor trustees Lebbos, Carter and Gold.  Giovanazzi had failed to present any new facts or intervening change in the controlling law or show that the court had erred.

First, the court rejected Giovanazzi's reliance on <u>Decker v. Voisenat (In re Serrato)</u>, 214 B.R. 219 (Bankr. N.D. Cal. 1997), as that case did not concern, let alone stand for, the proposition for which Giovanazzi cited it.

As for rejecting Giovanazzi's declaration and his request for judicial notice of certain facts contained therein, the court found that the type of alleged facts of which Giovanazzi asked the

-22-

court to take judicial notice either failed to meet the standards of FED R. EVID. 201(b) or were not appropriate matters for judicial notice. Further, these issues had already been raised by Lebbos and others, considered, and resolved against them in the Judgment, which was affirmed on appeal and was now final and binding.

The bankruptcy court also rejected as frivolous Giovanazzi's contention that the district court and Ninth Circuit only upheld the Judgment against Lebbos, Carter and Gold as individuals and not as trustees of the Trust. Not only did Giovanazzi fail to provide any documents to support this proposition, the record showed that Lebbos was sued both individually and as trustee of the Trust; Gold and Carter were sued as trustees of the Trust.

Finally, as to Giovanazzi's repeated assertion that the bankruptcy court lacked jurisdiction over the Beneficiaries, that they were indispensable parties in the prior adversary action and, consequently, that the Judgment was not final and binding as to them, the court found that Giovanazzi's assertions were either not supported by any authority or the cases he cited did not stand for the proposition for which he cited them. In short, Giovanazzi cited no authority to overcome the court's conclusion that a beneficiary of a trust is considered to be in privity with the trustee of the trust and is bound by judgments in actions against the trustee, as was the case here.

> **b. The motion to reconsider the PSJ Judgment, Recusal Motion, and Venue Motion**

The bankruptcy court also entered a civil minute order denying Giovanazzi's motion to reconsider the PSJ Judgment, the Recusal Motion and the Venue Motion on December 19, 2011. To the

-23-

extent Giovanazzi's motion raised the same arguments asserted in the motion to reconsider the Motion to Dismiss, the court incorporated the findings and conclusions it made regarding that reconsideration motion in this one. As with the motion to reconsider the Motion to Dismiss, the court found that this reconsideration motion was merely a rehashing of prior arguments.

Regarding Giovanazzi's allegations of the court's ill treatment of Lebbos, and conspiracy among the court, Trustee and her counsel, the court noted that it had come to expect attacks, both professional and personal, against it and others associated with Lebbos's case and its related adversary proceedings by Lebbos, trustees Carter and Gold and, now, Giovanazzi. However, Giovanazzi's accusations did not change the court's conclusion that it remained impartial. Therefore, the motion to reconsider the Recusal Motion was denied. Relief was also denied to the extent Giovanazzi sought reconsideration of the order denying the Venue Motion.

The court rejected Giovanazzi's argument that the bankruptcy court had no jurisdiction to apply the Judgment "retroactively" as lacking any cognizable legal theory or support. It was merely another example of Lebbos's intention, now that she had exhausted her appeals, to drag out as long as possible Trustee's enforcement of the Judgment.

Finally, the court rejected Giovanazzi's contention that all title reports showed that Trustee never recorded her Lis Pendens and that he owned the Condo. The "title report" Giovanazzi submitted was not a title report but rather a property profile, which had never been authenticated and would have little

-24-

evidentiary weight, as such profiles seldom refer to all documents of record. By contrast, Trustee had filed a recorded copy of the Lis Pendens with her PSJ.

Giovanazzi timely appealed the PSJ Judgment, the order denying the Motion to Dismiss and the orders denying the reconsideration of those matters on December 23, 2011.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(A) and 1334. We herein address our jurisdiction under 28 U.S.C. § 158.

## A. The PSJ Judgment[10]

Generally, an order granting partial summary judgment is not an appealable final order. Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1074 (9th Cir. 1994); Belli v. Temkim (In re Belli), 268 B.R. 851, 856-57 (9th Cir. BAP 2001)(order granting partial summary judgment without the certification required by Civil Rule 54(b) is not final appealable order).

On the same day the bankruptcy court denied Giovanazzi's reconsideration motion regarding the Motion to Dismiss - December 19, 2011 - Trustee filed her notice of voluntary dismissal of her remaining second claim under Rule 7041(a)(1)(A)(i), as Giovanazzi had not filed an answer or a motion for summary judgment. The dismissal was without prejudice. Since the notice complies with Rule 7041(a)(1)(A)(i), it took

---

[10] The parties have not questioned our jurisdiction over this appeal, but we have an independent duty to examine jurisdiction issues. In re Lucas Dallas, Inc., 185 B.R. at 804. Whether a bankruptcy court's order is final is a question of law reviewed de novo. Alexander v. Compton (In re Bonham), 229 F.3d 750, 760-61 (9th Cir. 2000).

-25-

immediate effect without further order from the bankruptcy court. Rule 7041(a)(1)(B); Swedberg v. Marotzke, 339 F.3d 1139, 1142 (9th Cir. 2003). Nonetheless, despite Trustee's proper voluntary dismissal, the bankruptcy court entered its own order dismissing without prejudice Trustee's remaining second claim on December 28, 2011. Therefore, although that order has no effect, the court approved the dismissal without prejudice, which disposed of all claims. As such, nothing is left for the bankruptcy court to decide as to Trustee's complaint.

Thus, we conclude that the dismissal, even though without prejudice, effectively made the PSJ Judgment a final judgment for purposes of appeal. Chrysler Motors Corp. v. Thomas Auto Co., 939 F.2d 538, 540 (8th Cir. 1991)(following the granting of a motion for partial summary judgment, the court dismisses without prejudice the remainder of the case, the effect of that action makes the judgment granting partial summary judgment a final judgment for purposes of appeal). See James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1069-70 (9th Cir. 2002).

**B.    The order denying the Motion to Dismiss**

Generally, an order denying a motion to dismiss is not appealable because it does not end the litigation on the merits. Confederated Salish v. Simonich, 29 F.3d 1398, 1401-02 (9th Cir. 1994); Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.), 894 F.2d 1136 (9th Cir. 1990)(order denying a motion to dismiss an adversary proceeding is not a final appealable order).

The order denying Giovanazzi's Motion to Dismiss was entered on October 3, 2011. His timely motion to reconsider that order filed on October 17, 2011, effectively tolled the appeal time of

the underlying order. Rule 8002(b)(2). The order denying reconsideration was entered on December 19, 2011, the same date Trustee voluntarily dismissed her remaining second claim. As we concluded above, the PSJ Judgment is a final judgment for purposes of appeal. Accordingly, to the extent the order denying the Motion to Dismiss was interlocutory, it merged into the PSJ Judgment on December 19, 2011, and is now final. See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Co., 248 F.3d 892, 897-98 (9th Cir. 2001).

**C. We dismiss the appeal of the orders denying the Recusal Motion and the Venue Motion.**

The parties have not questioned our jurisdiction over the appeal of the orders denying the Recusal Motion and Venue Motion, but we have an independent duty to examine jurisdiction issues. Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 804 (9th Cir. BAP 1995). It is not entirely clear from his Notice of Appeal whether Giovanazzi is appealing these orders. However, to the extent that he is, we DISMISS the appeal as untimely.

Under Rule 8002(a), a notice of appeal must be filed within 14 days of the entry of the order being appealed. The provisions of Rule 8002 are jurisdictional, and the untimely filing of a notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order. Anderson v. Mouradick (In re Mouradick), 13 F.3d 326, 327 (9th Cir. 1994). The orders denying the Recusal Motion and Venue Motion were entered on September 6, 2011. Giovanazzi filed a motion to reconsider those

-27-

orders (and the PSJ Judgment) on October 13, 2011.[11] Although he did not articulate any argument for reconsidering the orders denying the Recusal Motion and Venue Motion, his attempt to challenge the orders in his motion to reconsider could only be considered a motion for relief from judgment under Civil Rule 60(b), incorporated by Rule 9024, because it was not filed within 14 days of entry of the orders. See Civil Rule 59(e), incorporated by Rule 9023.

Under Rule 8002(b)(4), a motion under Rule 9024 only tolls the appeal time of the underlying order when it is filed within 14 days after entry of the order. Therefore, Giovanazzi's motion to reconsider the orders denying the Recusal Motion and Venue Motion, filed on October 13, 2011, did not toll the appeal time of the orders denying those motions on September 6, 2011. Accordingly, the appeal of these orders is untimely, and we must DISMISS the appeal for lack of jurisdiction. As a result, we will not consider any arguments Giovanazzi's raises with respect to these issues.

To the extent his appeal is live with respect to the order denying reconsideration of these orders, Giovanazzi fails to present any argument as to how the bankruptcy court abused its discretion in denying the reconsideration motion. Therefore, this issue has been waived. City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010)(appellate court in this circuit "will not review issues which are not argued specifically and distinctly

---

[11] The PSJ Judgment was entered on September 30, 2011. Thus, the motion to reconsider it was filed within the required 14 days and tolled the appeal time.

-28-

in a party's opening brief.").

**III. ISSUES**

1.    Did the bankruptcy court err when it granted the PSJ?

2.    Did the bankruptcy court err when it denied the Motion to Dismiss?

3.    Did the bankruptcy court abuse its discretion when it denied the motions to reconsider the PSJ Judgment and the order denying the Motion to Dismiss?

**IV. STANDARDS OF REVIEW**

We review the bankruptcy court's grant of summary judgment de novo.  SN Ins. Servs., Inc. v. SNTL Corp. (In re SNTL Corp.), 380 B.R. 204, 211 (9th Cir. BAP 2007).  Likewise, we review a denial of a motion to dismiss de novo.  SEC v. Colello, 139 F.3d 674, 675 (9th Cir. 1998).  De novo means review is independent, with no deference given to the trial court's conclusion.  Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010).

The bankruptcy court's decision to grant permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079 (9th Cir. 2004)(reviewing summary judgment). The bankruptcy court's order denying a motion for reconsideration is also reviewed for an abuse of discretion.  Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010).  A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

-29-

## V. DISCUSSION

**A.** **The bankruptcy court did not err in granting the PSJ or in denying the Motion to Dismiss.**

### 1. Civil Rule 12(b)(6) and Civil Rule 56

Under Civil Rule 56(c), incorporated here by Rule 7056, the appellate court's review is governed by the same standard used by the trial court. Quest Comm'ns, Inc. v. Berkeley, 433 F.3d 1253, 1256 (9th Cir. 2006). On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the bankruptcy court correctly applied the relevant substantive law. Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004). The court must not weigh the evidence or determine the truth of the matter but only determine whether a genuine issue for trial existed. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). Summary judgment may be affirmed on any ground supported by the record. Enlow v. Salem-Keizer Yellow Cab Co., 371 F.3d 645, 649 (9th Cir. 2004).

When considering a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6), incorporated here by Rule 7012, a court must take as true all allegations of material fact and construe them in a light most favorable to the nonmoving party. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**2. Section 551**

Trustee's first claim sought to preserve the transfers avoided in the Judgment under § 551. That statute provides:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Thus, once a trustee recovers an asset for the estate through one of the enumerated transfer or lien avoidance provisions, § 551 automatically preserves the asset for the benefit of the estate. Heintz v. Carey (In re Heintz), 198 B.R. 581, 584 (9th Cir. BAP 1996)(citing In re Van De Kamps's Dutch Bakeries, 908 F.2d 517, 520 (9th Cir. 1990)); In re Schmiel, 319 B.R. 520, 529 (Bankr. E.D. Mich. 2005)(once the transfer of an asset is avoided, § 551 automatically returns that "stick" to the "bundle" that makes up estate property and preserves it for the benefit of the estate). "[I]t is clear that any interest in property preserved for the benefit of the estate or ordered transferred to the estate under section 551 becomes property of the estate under section 541(a)(4)."[12] 5 COLLIER ON BANKRUPTCY ¶ 551.02[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012). Upon avoidance of a lien or fraudulent transfer, under § 551 the trustee "steps into the shoes" of the former lienholder or transferor and enjoys the same rights in the property that the original lienholder or transferor enjoyed. See Morris v. St. John Nat'l Bank (In re Haberman), 516 F.3d 1207, 1210 (10th Cir. 2008).

---

[12] Section 541(a)(4) provides, in relevant part, that the bankruptcy estate includes "[a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551 of this title."

**3. Analysis**

The Judgment, entered on April 17, 2008, avoided two transfers by Lebbos - one on August 19, 2004, and one on May 25, 2005. Those transfers were avoided under §§ 544 and/or 548. Clearly, these Code sections are referenced in § 551. In addition to avoidance, the Judgment provided Trustee with the remedy of recovery of all right, title and interest in the Condo under § 550. After a series of appeals by defendants Lebbos, Carter and Gold, all of which were unsuccessful, the Judgment is now final.

However, just three days prior to entry of the Judgment, a quitclaim deed from Carter and Gold to Giovanazzi transferring title of the Condo to Giovanazzi was recorded in Los Angeles County. Months later, in August 2008, Giovanazzi executed a deed of trust purporting to encumber the Condo to secure payment of an alleged promissory note for $775,000 from the Beneficiaries. That deed of trust was recorded in Los Angeles County in September 2008. These acts provide the basis for many of Giovanazzi's arguments for why the bankruptcy court erred in granting Trustee's PSJ and denying his Motion to Dismiss. We address each of his arguments in turn.

**a. Statute of limitations and laches**

Giovanazzi contends that Trustee's adversary action 11-2386, brought three years after the Judgment, was barred by the one year statute of limitations in § 550(f).[13] Specifically, Giovanazzi

_____

[13] Section 550(f) provides, in relevant part:

"An action or proceeding under this section may not be commenced after . . .

(continued...)

-32-

contends that because Lebbos, Carter and Gold did not own the Condo at the time of Judgment but rather he, a nonparty, did, Trustee was required to commence a separate recovery action against him under § 550. We disagree.

Here, the Judgment accomplished both an avoidance and recovery under §§ 548 and 550. An avoidance sets aside or nullifies a transaction. Nullification means that the transfer is retroactively ineffective and that the transferee legally acquired nothing as a result of the transfer. 5 COLLIER ON BANKRUPTCY at ¶ 548.10[1]. In other words, because the transfers of 2004 and 2005 were avoided, Carter and Gold had no interest to convey to Giovanazzi at the time they signed and recorded the quitclaim deed, and Giovanazzi had no interest to convey at the time he signed and recorded the deed of trust. As a result, Trustee was not required to "recover" the Condo from Giovanazzi (or any other party) under § 550. Therefore, the one year statute of limitations in § 550(f) does not apply. Giovanazzi's reliance on In re Serrato is misplaced. First, it is not relevant to the instant case. Here, per the Judgment, Trustee effectively avoided the transfers by Lebbos and recovered the Condo. As a result, no subsequent "recovery" action was necessary. Second, even if In re Serrato were somehow relevant here, its holding is not binding on this Panel.

Giovanazzi also contends that laches barred adversary action 11-2386 because Trustee knowingly waited three years before

---

[13](...continued)
(1) one year after the avoidance of the transfer on account of which recovery under this section is sought[.]"

-33-

bringing it. He further contends the bankruptcy court never addressed the laches claim. Giovanazzi is wrong on both counts. Lebbos, Carter and Gold actively pursued appeal of the Judgment to the U.S. Supreme Court, which took a little over two years. Giovanazzi's role in recording the quitclaim deed, his refusal to recognize the Judgment and its effect of enjoining him from encumbering or exercising control over the Condo, and his unlawful detainer action attempting to remove Trustee from her rightful possession of the Condo, also contributed to delay not attributable to Trustee. The bankruptcy court found Giovanazzi's laches argument "ironic" when considering these and many of his other antics connected with the Lebbos bankruptcy case. Further, after the defendants had exhausted their appeals of the Judgment, Trustee brought adversary action 11-2386 within seven months of the U.S. Supreme Court's denial of the defendants' petition for writ of certiorari. On this record, we fail to see any lack of diligence by Trustee barring her action against Giovanazzi.

**b.  The Lis Pendens**

Giovanazzi contends that because Trustee's Lis Pendens is void for a variety of technical reasons, the bankruptcy court could not apply the Judgment retroactively to him or the Beneficiaries and they are not bound by it. We disagree.

The purpose of a lis pendens is to give constructive notice to potential purchasers and encumbrancers of pending litigation so that the judgment in the action will be binding on subsequent parties, even if they acquire their interest before judgment is

actually rendered. CCP § 405.24;[14] <u>Arrow Sand & Gravel, Inc. v. Superior Court</u>, 700 P.2d 1290, 1291-92 (Cal. 1985). A recorded lis pendens effectively clouds the title to the property described in the notice and, as a practical matter, it impedes or prevents a sale or encumbrance of the property until the litigation is resolved or the lis pendens is expunged. 5 CAL. REAL EST. § 11:151 (Harry D. Miller & Marvin B. Starr, eds., 3d ed. 2009). "A judgment in the pending action that determines the rights in the property favorable to the claimant relates back to and receives its priority from the date the lis pendens is recorded, and is senior and prior to any interests in the property acquired after that date to preclude a subsequent purchaser from acquiring a superior interest." <u>Id.</u> (citing CAL. CIV. CODE § 1214 and CCP § 405.24). "The judgment has priority even if the subsequent interest or lien is recorded after the lis pendens but before the judgment." <u>Id.</u> (citing <u>Dobbins v. Econ. Gas Co.</u>, 189 P. 1073 (Cal. 1920), <u>Goldstein v. Ray</u>, 173 Cal. Rptr. 550 (Cal. Ct. App. 1981), and <u>Ahmanson Bank & Trust Co. v. Tepper</u>, 74 Cal. Rptr. 774 (Cal. Ct. App. 1969)). The judgment is binding on any person who acquired an interest in the property subject to the lis pendens. 5 CAL. REAL EST. § 11:149 (citing CCP § 1908(a)(2)). <u>See</u> <u>Slintak v. Buckeye Ret. Co.</u>, 43 Cal. Rptr. 3d 131, 139-40 (Cal. Ct. App.

---

[14] CCP § 405.24 provides: "From the time of recording the notice of pendency of action, a purchaser, encumbrancer, or other transferee of the real property described in the notice shall be deemed to have constructive notice of the pendency of the noticed action as it relates to the real property and only of its pendency against parties not fictitiously named. The rights and interest of the claimant in the property, as ultimately determined in the pending noticed action, shall relate back to the date of the recording of the notice."

-35-

2006)(lis pendens provides constructive notice of property litigation such that any judgment later obtained in the action relates back to the filing of the lis pendens and clouds title until the litigation is resolved or the lis pendens is expunged; any party acquiring an interest in the property after the action is filed is bound by the judgment).

CCP §§ 405.20 through 405.24 govern a lis pendens in California. First, a party to the action must record the notice of pendency of action in the recorder's office in which the real property is located, and the notice shall contain the names of all parties affected by the action as well as a description of the property affected. CCP § 405.20. Here, Trustee recorded the Lis Pendens in Los Angeles County on January 4, 2007, just one day after she filed adversary action 07-2006 against Lebbos, Carter and Gold. The Condo is located in Los Angeles County. The notice contained a legal description of the Condo and the names of Lebbos, Carter and Gold as trustees. Thus, it complied with CCP § 405.20.

Second, the notice must be signed by the claimant's attorney of record or, if the claimant is acting in propria persona, by the claimant with the approval of the judge. CCP § 405.21. Giovanazzi contends the Lis Pendens was void because the notice states that it was filed by "Michael P. Dacquisto, Attorney for Plaintiff, John W. Reger," and John Reger was not a party to the action. Although the signature page does reflect this typographical error, the caption on the notice clearly states that Trustee is the plaintiff in the action and that her attorney of record is Michael P. Dacquisto. Further, Giovanazzi cites no

-36-

authority holding that this minor error renders the Lis Pendens void. Thus, the notice complied with CCP § 405.21.

Third, CCP § 405.22 requires proper service and proof of service of a lis pendens. Prior to recording, a copy of the notice must be mailed by registered or certified mail, return receipt requested, to all known addresses of the parties against whom the claim is adverse and to the record owners of the property affected by the claim in the county assessor's records. Service must also be made on all new adverse parties as they join the action, and a proof of service must be recorded with the lis pendens. If there is no known address for service on an adverse party or owner, a declaration under penalty of perjury to that effect must be recorded with the lis pendens. Giovanazzi raises many arguments here, contending that violation of any one of the above requirements rendered the Lis Pendens void per CCP § 405.23.[15] First, Giovanazzi claims that Trustee failed to mail her Lis Pendens by registered or certified mail with a return receipt requested. The record shows otherwise. Trustee's proof of service indicates that her Lis Pendens was sent to Lebbos, Carter and Gold via certified mail, return receipt requested. Next, Giovanazzi contends Trustee knowingly sent the Lis Pendens to incorrect addresses for Lebbos, Carter and Gold, and both Lebbos and Gold testified they never received the Lis Pendens. We first note that these issues should have been raised in the prior

[15] CCP § 405.23 provides: "Any notice of pendency of action shall be void and invalid as to any adverse party or owner of record unless the requirements of Section 405.22 are met for that party or owner and a proof of service in the form and content specified in Section 1013a has been recorded with the notice of pendency of action."

-37-

adversary action 07-2006, and, to the extent they were not, they are now precluded by virtue of the final Judgment. Further, co-trustee Carter, who was served at the same address as Gold, never testified that he did not receive the Lis Pendens. In addition, if Lebbos had since changed her address from what she reported to the bankruptcy court when her case was filed in 2006 as she claimed, Giovanazzi did not provide a copy of her change of address filed with the court. In any event, as the bankruptcy court noted, Giovanazzi failed to cite any authority holding that any of these alleged service errors prevented the Lis Pendens from providing constructive notice of adversary action 07-2006.

Giovanazzi also claims the Lis Pendens was not sent to all owners of record of the Condo - i.e., the Beneficiaries and Trust II. Again, this issue should have been raised (if it was not) in adversary action 07-2006 and is now precluded. In any event, Giovanazzi did not provide a copy of the "latest county assessment roll" to prove that these parties were even listed as owners of record in January 2007. The alleged "title report" that he did provide does not list the Beneficiaries, but rather lists only Trust II as "secondary owner." However, as the bankruptcy court noted, this alleged title report was never authenticated and proves nothing. As a result, Trustee was not required to record a declaration stating she had no known addresses for these alleged owners.

Fourth, immediately after recording a lis pendens, a copy of it must be filed with the court in which the action is pending. CCP § 405.22. Service shall also be made immediately and in the same manner upon each adverse party later joined in the action.

-38-

Giovanazzi contends that Trustee's failure to file the Lis Pendens in adversary action 07-2006 is fatal. It is unclear on this record whether Trustee did in fact file it in that action. Nevertheless, this is something that also should have been raised in that action and is now precluded by the Judgment. In any event, Giovanazzi did not cite any authority holding that this defect, if it exists, impaired the effectiveness of the Lis Pendens' ability to provide the required constructive notice.

Accordingly, we conclude that the Lis Pendens either complied with California law, or, to the extent that it may not have, Giovanazzi did not show that it failed to provide constructive notice to him or the Beneficiaries. As a result, the Judgment, which determined the rights to the Condo in favor of Trustee, relates back to the date the Lis Pendens was recorded on March 14, 2007, and Trustee's interest is senior and prior to any interests in the Condo acquired after that date. CAL. CIV. CODE § 1214; CCP § 405.24. This is true as to the quitclaim deed, which was recorded after the Lis Pendens but before the Judgment, and to the deed of trust which was recorded after the Judgment. It is irrelevant that the Judgment was entered <u>after</u> Carter and Gold executed the quitclaim deed to Giovanazzi. Despite Giovanazzi's contentions to the contrary, he and the Beneficiaries <u>are</u> bound by the Judgment. CCP § 1908(a)(2); <u>Slintak</u>, 43 Cal. Rptr. 3d at 139-40.

**c. The alleged Condo owners did not need to be joined in adversary action 07-2006.**

Giovanazzi contends that because neither he nor the Beneficiaries, as indispensable parties, were joined in the prior

-39-

adversary action, then adversary action 11-2386 had to be dismissed. The bankruptcy court noted in its memorandum decision on the Motion to Dismiss that this issue had been raised during the prior adversary action and was now precluded by the Judgment. We agree. Further, as the bankruptcy court noted, beneficiaries are bound by a judgment against their trustee in his capacity as trustee. <u>Davies v. Guinn Res. Co.</u>, 978 F.2d 714, at *4 (9th Cir. Oct. 29, 1992)(table case)(citing <u>Chicago, Rock Island & Pac. Ry. v. Schendel</u>, 270 U.S. 611, 620-21 (1926)).

### d. The bankruptcy court did not retroactively change the date of the Judgment.

Although difficult to discern, Giovanazzi appears to argue that because the Judgment was entered on April 17, 2008, the bankruptcy court could not "retroactively" change the date of the Judgment to take effect on March 14, 2007, when the Lis Pendens was recorded, contending that this was an unconstitutional ex parte act. We disagree. By virtue of California law, the Judgment avoiding the transfers automatically related back to the date of the Lis Pendens and all parties claiming an interest adverse to that of Trustee in the Condo are bound by it. Further, to the extent he attempts to raise arguments with respect to the Judgment on behalf of Lebbos, Carter or Gold, he lacks standing to do so.

### e. The unlawful detainer action

Giovanazzi contends the bankruptcy court lacked jurisdiction to declare the unlawful detainer action pending in state court void. First, the bankruptcy court did not so declare. It held only that the lawsuit was of no force and effect as to Trustee or

-40-

the Condo and provided no evidence of ownership of the Condo. Further, because Trustee (and the bankruptcy estate) is the rightful owner of the Condo, the bankruptcy court has jurisdiction over all persons seeking to interfere with Trustee's rights to control and administer estate property.

**f.    The injunction is not overly broad.**

The only argument Giovanazzi raises here is that the bankruptcy court's permanent injunction enjoining him from any further efforts to convey, transfer, encumber or otherwise affect the title to or the encumbrances on the Condo is overly broad to prevent this appeal.  Seeing that we are considering his appeal, this argument fails.

**g.    The Recusal Motion and Venue Motion**

As we stated above, because Giovanazzi's appeal of the orders denying the Recusal Motion and Venue Motion were untimely, we will not consider the issues he raises here.  In any event, we reject any and all of Giovanazzi's contentions.

**4.    Conclusion**

On this record, we see no error by the bankruptcy court in granting Trustee judgment on her first and third claims.  Trustee met her burden to show that no genuine issue of material fact existed, and Giovanazzi failed to demonstrate the existence of an issue for trial.  We also find no abuse of discretion by the court in issuing the permanent injunction against Giovanazzi.  Since we agree that the PSJ Judgment was proper, Trustee clearly pled enough facts in her adversary complaint to state a plausible claim for relief.  Thus, it follows that the bankruptcy court did not

err in denying Giovanazzi's Motion to Dismiss.[16]

**B.   The bankruptcy court did not abuse its discretion in denying the motion to reconsider the PSJ Judgment and the order denying the Motion to Dismiss.**

A motion under Civil Rule 59(e) should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change of controlling law. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration is not for rehashing the same arguments made the first time, or to assert new legal theories or new facts that could have been raised at the initial hearing. In re Greco, 113 B.R. 658, 664 (D. Haw. 1990), aff'd and remanded, Greco v. Troy Corp., 952 F.2d 406 (9th Cir. 1991).

Giovanazzi does not articulate any specific arguments as to why the bankruptcy court abused its discretion in denying the motions to reconsider the PSJ Judgment and the order denying the

---

[16] To the extent Giovanazzi argues that the bankruptcy court lacked jurisdiction because Lebbos did not sign her bankruptcy petition or that the Condo was not property of the estate, these issues have been decided in the Judgment and affirmed time and again on appeal. Not only is Giovanazzi precluded from raising these issues based on issue preclusion, these issues are also law of the case, and we will not consider them. Ariz. v. Cal., 460 U.S. 605, 618 (1983)("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

To the extent he argues the bankruptcy court lacked jurisdiction to change title to the Condo since it is located in Los Angeles, because the Condo was property of the estate the bankruptcy court had jurisdiction over it. See § 541(a)(1); 28 U.S.C. § 1334(e)(1)(bankruptcy court has exclusive jurisdiction of all property, wherever located, of the debtor and of property of the estate as of the commencement of the case). The bankruptcy court was further authorized under Rule 7070 to enter judgment divesting any party's title in the Condo and vesting title in Trustee because the Condo was "within the jurisdiction of the court."

Motion to Dismiss.  As such, these issues are waived.  <u>City of Emeryville</u>, 621 F.3d at 1261.  Even if we considered these issues, we see no abuse of discretion by the bankruptcy court in denying the reconsideration motions.  The motions either rehashed the same arguments made in the original motions, raised issues that had already been decided in the Judgment, or lacked any merit.

**VI. CONCLUSION**

For the foregoing reasons, we AFFIRM the bankruptcy court's decision to grant the PSJ and to deny the Motion to Dismiss. However, because Giovanazzi's appeal of the orders denying the Recusal Motion and Venue Motion was untimely, we DISMISS that appeal for lack of jurisdiction.